**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS D'ANGELO,

         Plaintiff,

v.                                                    Case No. 10-12195
                                                      Hon. Lawrence P. Zatkoff

CLINTON TOWNSHIP, NICHOLAS
DYKAS, JASON FIGURSKI, KEITH
WATSON, and PAUL PARENT.

         Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 13, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants Clinton Township, Nicholas Dykas, Jason

Figurski, and Keith Watson's Motion for Summary Judgment [dkt 30]. The Motion has been fully

briefed. The Court finds that the facts and legal arguments are adequately presented in the parties'

papers such that the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the Motion be resolved on the

briefs submitted, without oral argument. For the following reasons, Defendants Clinton Township,

Nicholas Dykas, Jason Figurski, and Keith Watson's Motion for Summary Judgment is GRANTED

IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiff's case arises from an arrest by Defendants Nicholas Dykas ("Dykas"), Jason

Figurski ("Figurski"), and Keith Watson's ("Watson" and collectively "Defendants") for Plaintiff allegedly engaging in indecent exposure under Mich. Comp. Laws § 750.335a on April 12, 2008, in the Macomb-Clinton Library.  On September 11, 2008, Plaintiff was found not guilty by a jury. Plaintiff then filed the instant case against all named Defendants.

## A. FACTUAL HISTORY

On April 12, 2008, Plaintiff was using a computer in the Macomb-Clinton Library adult computer area.  Defendant Paul Parent ("Parent") sat at the computer terminal next to Plaintiff. Parent became distracted by noises that Plaintiff made, which Parent described at trial as "chirping" or "grunting."  Parent observed Plaintiff over a 45-minute time frame.  During this time, on three separate occasions Parent claimed that Plaintiff put his hands down towards "his crotch area and he was massaging his genitals" while his zipper was down on his pants.  Parent also claimed Plaintiff's screen was depicting pornography.  Parent concluded that Plaintiff was masturbating while looking at pornography.

Frustrated, Parent complained to library worker Janine Taylor about Plaintiff's conduct and requested that Taylor call the police.  Taylor declined to called the police because she had not witnessed the conduct of Plaintiff.  Instead, Taylor went to the manager in charge, Deb Bodner, and informed her of Parent's complaint.  After Taylor returned to her desk, Parent continued to complain so Taylor sent an electronic message to the computer terminal where Plaintiff was seated, stating "There's been a complaint.  Please stop whatever you might be doing."  Meanwhile, Bodner walked past the glass-enclosed adult computer area and observed Plaintiff.  She returned to Taylor's desk where Parent was still standing.  Nonfiction librarian Ellen McNally had also come over to Taylor's desk.  Bodner explained that she had not observed Plaintiff engaging in any conduct as Parent

2

alleged.  Ultimately, after Parent's relentless complaining, Taylor called the police, informing the dispatcher that a library patron (Parent) claims another patron (Plaintiff) was playing with himself in the library's computer lab and would like to file a complaint.  The dispatcher told Taylor the police would be sent.  Parent was then escorted downstairs by McNally and Bodner to await the arrival of the police.

Approximately ten minutes later, officers Dykas, Figurski, and Watson arrived at the library. According to Parent, he told the officers that he had observed Plaintiff looking at pornography for approximately 45 minutes and massaging his genitals while making grunting noises, but he never told the officers that he witnessed Plaintiff expose his penis.  Parent did tell the officers that based on his observations he believed Plaintiff was masturbating.

Bodner then accompanied the officers to Taylor's desk and the adult computer area.  Bodner indicated to the officers that when she walked past the adult computer area she had only witnessed Plaintiff's one hand on the computer desk and his other hand on his lap.  The officers asked Taylor if she had observed anything and if there was a way to see what Plaintiff had been doing on the computer.  Taylor replied that she had not observed anything and, based on her knowledge, if Plaintiff had turned the computer off then the records of Plaintiff's activities were erased.

The officers determined based on the librarians and Parent's statements to arrest Plaintiff for indecent exposure.  The officers, however, had not observed Plaintiff engaging in the conduct that Parent alleged.  According to Figurski, Plaintiff did not resist arrest and cooperated with the officers. According to Plaintiff, once outside of the adult computer area, Figurski asked Plaintiff if he was viewing pornography on the computer.  Plaintiff denied such conduct.  Figurski replied that a witness also observed him masturbating, which Plaintiff also denied.  Figurski then escorted Plaintiff

3

out of the library and seated him in the rear of Figurski's patrol car.  While Plaintiff was escorted to the patrol car, Dykas checked the computer used by Plaintiff and found no evidence that he had been viewing pornography.[1]  According to Plaintiff, once seated in the patrol car, his legs were still outside of the car when without notice, Figurski "shoved" Plaintiff's legs into the patrol car, resulting in Plaintiff to yell "ouch" because his left knee hit the door jamb of the car.

Dykas and Figurski took Plaintiff to the Clinton Township Police Department where he was booked.  According to Plaintiff, he repeatedly asked Figurski what he was being charged with. Figurski did not specifically identify the charges against Plaintiff, finally responding that Plaintiff was going to be charged with a felony.  After spending an hour in the jail cell, a friend of Plaintiff paid his $500 bond; Plaintiff was released.  Viewing the bond receipt, Plaintiff became aware that he was being charged with indecent exposure.  Plaintiff states that he suffered from jock rash on this day, which caused the itching of his genital area, but during his interaction with the officers he never had time to explain to them that he had such condition.

On the same day, Dykas wrote a "General Incident Report" (the "police report"), documenting Plaintiff's arrest for indecent exposure.  The police report contains the following facts which were contrary to the evidence produced at trial.  The report states that Bodner had seen Plaintiff masturbating and that Parent had told him that Plaintiff had taken his penis out of his pants, and masturbated.  To the contrary, Bodner testified that she had not seen Plaintiff engaging in any such conduct, and Parent testified that he had believed Plaintiff was masturbating, but he never

---

[1] According to Plaintiff, computer records introduced at his criminal trial demonstrated that Plaintiff never viewed pornography on April 12, 2008.  Plaintiff's response brief indicates this is evidenced by pages 114 through 120 of the trial transcript.  Plaintiff, however, fails to attach these pages to his response brief.

witnessed Plaintiff's penis.

A misdemeanor complaint was filed against Plaintiff in the Macomb County 41B District Court for a single count of indecent exposure in violation of Mich. Comp. Laws § 750.335a. Dykas was identified as the complaining witness. Plaintiff remained on bond pending the return of a not guilty verdict by a jury on September 11, 2008.

**B.**     **PROCEDURAL HISTORY**

On June 3, 2010, Defendants removed Plaintiff's Complaint based on the Court's federal-question jurisdiction from the Macomb County Circuit Court. Plaintiff's Complaint asserts four counts against Defendants: Count I (state-law false arrest and false imprisonment); Count II (state-law malicious prosecution); Count III (state-law intentional infliction of emotional distress); and Count IV (Violation of 42 U.S.C. § 1983). On June 28, 2010, the Court remanded Plaintiff's state-law claims—Counts I–III. Plaintiff's sole remaining count, Count IV, alleges several violations:

> Defendant officers violated rights, privileges and immunities of the Plaintiff including, but not limited to: [false] arrest, [false] imprisonment, and [malicious] prosecution without probable cause in violation of the 4th Amendment; the use of excessive force during an arrest in violation of the 4th Amendment; and, manufacturing and suborning perjury in violation of the 14th Amendment.

Pl.'s Compl. ¶ 51. Plaintiff also asserts municipal liability against Clinton Township due to its customs, policies and procedures, and failure to train its employees. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 and costs, interest, and attorney fees pursuant to 42 U.S.C. § 1988. Defendants filed the instant Motion for Summary Judgment on Plaintiff's Count IV.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

5

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language

of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'—that is, pointing

out to the district court—that there is an absence of evidence to support the nonmoving party's

case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient

[to defeat a motion for summary judgment]; there must be evidence on which the jury could

reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff alleges violations of the Fourth Amendment and Fourteenth Amendment under 42 U.S.C § 1983 against the individual Defendants, and against Defendant Clinton Township for municipal liability under 42 U.S.C § 1983 based on its alleged failure to train and supervise its officers. Defendants argue that they are entitled to summary judgment on Plaintiff's Count IV for the following reasons:

> (1) no genuine dispute exists regarding Plaintiff's false arrest and false imprisonment claim since Dykas, Figurski, and Watson had probable cause to arrest Plaintiff for indecent exposure;
>
> (2) no genuine dispute exists regarding Plaintiff's malicious prosecution claim since Dykas, Figurski, and Watson had probable cause to arrest Plaintiff and neither Dykas, Figurski, or Watson made the decision to prosecute Plaintiff;
>
> (3) no genuine dispute exists regarding Plaintiff's excessive force claim against Figurski since the force used was reasonable;
>
> (4) alternatively, Dykas, Figurski, and Watson are entitled to qualified immunity against Plaintiff's claims; and
>
> (5) no genuine dispute exists regarding Plaintiff's municipal liability claim that Clinton Township is entitled to summary judgment.

In responding to Defendants' Motion, Plaintiff asserts that he will stipulate to dismissal of his claims against Clinton Township and Watson. His brief also only provides argument on his claims against Dykas and Figurski. As such, the Court finds that Plaintiff concedes his claims against Clinton Township and Watson, and thus, dismisses the claims against Clinton Township and Watson. The Court also notes that Plaintiff's claims are under 42 U.S.C. § 1983, which provides

him relief only against a person who acted under the "color of any statute, ordinance, regulation, custom, or usage, of any State." Because Plaintiff fails to assert that Parent is such a person, the Court also dismisses Plaintiff's claims against Parent. Furthermore, Plaintiff appears to assert a broad claim of manufacturing and suborning perjury in violation of the Fourteenth Amendment against Defendants. Plaintiff, however, fails to brief this claim in his response brief. As such, the remaining issue before the Court is whether Plaintiff has established that he was deprived of his rights established by the United States Constitution by the actions of Dykas and Figurski. *See* 42 U.S.C. § 1983; *Flagg Brothers v. Brooks*, 436 U.S. 149, 155–57 (1978).

## A.    FALSE ARREST AND IMPRISONMENT

To establish a constitutional claim of false arrest under the Fourth Amendment, a plaintiff must show that no probable cause existed for the arrest. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997). Probable cause exists if, when considering the totality of the circumstances at the time, the arresting officer had knowledge of sufficient "facts and circumstances . . . to warrant a prudent person . . . in believing . . . that the suspect has committed . . . an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citation omitted); *see Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010).

Plaintiff argues that Figurski and Dykas lacked probable cause to arrest Plaintiff for indecent exposure under Mich. Comp. Laws § 750.335a because the only witness, Parent, never witnessed Plaintiff expose his penis. Plaintiff further argues that Figurski and Dykas were aware that Bodner and Taylor did not witness Plaintiff engage in any such conduct, Plaintiff's pants were zipped up when the officers arrived, and Dykas found no evidence that Plaintiff was viewing pornography on

8

the computer.  Therefore, Plaintiff concludes that Figurski and Dykas had no evidence to find probable cause to arrest Plaintiff.

In this case, the Court finds that a genuine dispute of fact exists whether Dykas and Figurski had probable cause to arrest Plaintiff.  The Court notes that Mich. Comp. Laws § 750.335a requires that a person "shall not knowingly make any open or indecent exposure of his or her person."  In construing "open or indecent exposure," the Michigan Court of Appeals held that "there is no requirement that the defendant's exposure actually be witnessed by another person in order to constitute 'open or indecent exposure,' *as long as the exposure occurred in a public place* under circumstances in which another person might reasonably have been expected to observe it."  *People v. Vronko*, 228 Mich. App. 649, 656–57 (Mich. Ct. App. 1998), *leave denied*, 459 Mich. 945 (1999) (emphasis added).  Thus, an actual exposure must have occurred in the library for Plaintiff to have violated Mich. Comp. Laws § 750.335a.  *Id.* at 657; *see also People v. Neal*, 266 Mich. App. 654, 662 (Mich. Ct. App. 2005).

In arresting Plaintiff, Dykas and Figurski had knowledge of the following facts and circumstances: (1) Parent was persistent about filing a complaint with the police regarding Plaintiff's conduct; (2) Plaintiff's conduct occurred in the library adult computer area; (3) the computer area had numerous computer terminals and was enclosed with large panes of glass; (4) Parent told the police that he had observed Plaintiff looking at pornography for approximately 45 minutes and massaging the crotch of his pants while making grunting noises; and (5) Parent thought that Plaintiff was masturbating.

Based on these facts and circumstances, a jury could find that a prudent person would not believe that Plaintiff had exposed himself in a public place where another library patron might

9

reasonably observe him. Neither Parent nor the library staff informed Dykas and Figurski that they actually witnessed Plaintiff expose himself. Plaintiff himself denied that he had done any such act when asked by Figurski. The only indication that Plaintiff exposed himself is the police report prepared by Dykas and Dykas's testimony at his deposition. The police report states that Parent told Dykas that Plaintiff "had pulled his penis out, through his zipper, and began pumping his penis while moaning and groaning." Dykas testified in his deposition that Parent made the same statement to him, which Dykas reported in the police report. Contrary to Dykas's deposition and the police report, however, Parent denies making any such statement. Thus, a genuine dispute of fact exists as to whether Dykas and Figurski had knowledge that Plaintiff actually exposed himself. As such, whether probable cause existed to arrest Plaintiff for indecent exposure is a question of fact for the jury. *See Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) ("The existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.").

Accordingly, for the reasons stated above, the Court finds that a reasonable jury could find that Dykas and Figurski lacked probable cause to arrest Plaintiff at the time and Plaintiff therefore was falsely imprisoned.

## B. MALICIOUS PROSECUTION

To sustain a malicious prosecution claim, a plaintiff must show that (1) a defendant officer "made, influenced, or participated" in the decision to prosecute the plaintiff; (2) probable cause did not exist for the criminal prosecution; (3) the plaintiff suffered a "deprivation of liberty" under the Fourth Amendment that is distinct from the plaintiff's initial seizure; and (4) the criminal prosecution was terminated in the plaintiff's favor. *Sykes*, 625 F.3d at 308–09 (citations omitted).

10

In this context, "participated" means that the officer "aids in the decision [to prosecute], as opposed to passively or neutrally participating. *Id.* at 308 n.5.

Plaintiff contends that each element can be shown. Specifically, Plaintiff argues that Defendants lacked probable cause to prosecute him, and Dykas, as complaining witness on the misdemeanor complaint, participated in the decision to prosecute Plaintiff. The Court finds, however, that Plaintiff has failed to produce sufficient evidence that Figurski and Dykas "made, influenced, or participated" in the decision to prosecute Plaintiff under Mich. Comp. Laws § 750.335a. As to Figurski, Plaintiff provides no evidence that Figurski was involved in the decision to prosecute Plaintiff or was consulted with regard to the decision to prosecute Plaintiff. *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) (holding that a plaintiff's malicious prosecution claim failed because the plaintiff failed to produce evidence that a defendant officer made or even was consulted with regard to the decision to prosecute the plaintiff). As such, to the extent that Plaintiff asserts his malicious prosecution claim against Figurski, Plaintiff's claim fails as a matter of law.

As to Dykas, Plaintiff only points to Dykas's actions in creating the police report and being identified as the complaining witness on the misdemeanor complaint filed in the Macomb County 41B District Court. Such actions do not rise to the level of participation as set forth in *Sykes*. Other than Dykas presumably providing his police report to the prosecutor and being identified as the complaining witness, Plaintiff produces no evidence that Dykas actually conferred with the prosecutor in deciding to prosecute Plaintiff. *See Sykes*, 625 F.3d at 308–09 (holding that passively or neutrally participating does not establish that the officer aided in the decision to prosecute a plaintiff); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (holding that

11

the plaintiff's malicious prosecution claim failed when the plaintiff "present[ed] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor's] decision to bring charges against [the plaintiff]").

Thus, viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has not produced sufficient evidence to support a constitutional violation for malicious prosecution, and therefore, Defendants are granted summary judgment with respect to Plaintiff's malicious prosecution claim.

## C. EXCESSIVE FORCE

The Fourth Amendment protects individuals from the application of excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000). The Court reviews claims of excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

When resolving issues of excessive force, the Court must "carefully balance the nature of

12

the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See Tallman v. Elizabethtown Police Dep't,* 167 Fed. Appx. 459, 463 (6th Cir. 2006). Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Plaintiff argues that Figurski used excessive force on him despite the fact that Plaintiff was cooperating with Defendants. Plaintiff concludes that a reasonable officer would recognize that "grabb[ing] Plaintiff's legs and smash[ing] his left knee into the door jamb of the vehicle" was unnecessary and excessive.

Drawing all factual inferences in Plaintiff's favor, the Court finds that a reasonable jury could conclude that Figurski used excessive force when, after Plaintiff was seated in the rear of the car, Figurski "shoved" Plaintiff's legs into the patrol car.[2] Defendants provide no evidence to indicate that Plaintiff's version of the facts regarding the conduct of Figurski are incorrect. Plaintiff testified that when Figurski "shoved" Plaintiff's legs into the car to turn him facing forward, his left knee hit the door jamb. As to the amount of alleged force applied by Figurski, according to Plaintiff, he continues to have pain in his knee. Plaintiff, however, alleges that because he lacks insurance he has not sought treatment for his knee. Plaintiff's testimony, uncontradicted by Figurski, indicates

---

[2] The record indicates that Dykas was not involved in escorting Plaintiff to the patrol car and repositioning him in the rear of the car. Rather, Dykas was still in the library at the time Plaintiff alleges that Figurski used excessive force in repositioning him in the patrol car. Thus, to the extent that Plaintiff asserts an excessive force claim against Dykas, such a claim is dismissed for failure to state a claim.

13

that he did not pose a threat to the safety of Defendants and was not resisting arrest.  *See Graham*, 490 U.S. 386, 396–97.   It is undisputed that Plaintiff was cooperating with Defendants. Furthermore, the severity of the crime at issue only amounts to a misdemeanor under Mich. Comp. Laws § 750.335a.  *See Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 174 (6th Cir. 2004) (holding that a woman arrested for trespassing in a movie theater, kicked in the legs and thrown against a display case despite a minor offense, posing no immediate threat, and not attempting to flee created genuine issues of material fact).  Thus, a reasonable jury could find that a reasonable officer at the scene, aware of the totality of the circumstances, could find that the force employed in this case rises to the level of excessive force.

**D. QUALIFIED IMMUNITY**

"Under the doctrine of qualified immunity, governmental officials, including police officers, will not be held liable on a plaintiff's claim for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights which the reasonable officer in the defendants' position would have known."  *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a defendant is entitled to qualified immunity, the Sixth Circuit has adopted a three-step inquiry: "(1) whether the facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was 'a clearly established' right of which any reasonable officer could have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right."  *Abel v. Harp*, 278 Fed. Appx. 642, 649 (6th Cir. 2008) (quoting *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002)).

14

1.      **Constitutional Violation**

As discussed in Part IV (A) and (C), *supra*, the facts taken in the light most favorable to

Plaintiff could establish that:

> (a) Dykas and Figurski violated the Fourth Amendment by arresting
> and imprisoning Plaintiff without probable cause; and
>
> (b) Figurski violated the Fourth Amendment by his application of
> excessive force.

2.      **Clearly Established**

Whether a right is clearly established must be analyzed "in light of the specific context of

the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  "'[T]he right the official is

alleged to have violated must have been 'clearly established' in a more particularized, and hence

more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official

would understand what he is doing violates that right.'" *Id*. at 202 (quoting *Anderson v. Creighton*,

483 U.S. 635, 640 (1987)).

*a.*      ***False Arrest and Imprisonment***

It is clearly established that an arrest is valid so long as there is probable cause.  *Gerstein v.

Pugh*, 420 U.S. 103, 111–12 (1975).  As stated above, probable cause is defined as sufficient facts

and circumstances "to warrant a prudent man in believing that the [suspect] had committed or was

committing an offense." *Id.* at 112 (internal citations omitted).   Under Michigan law, arrestable

offenses include felonies, misdemeanors, and ordinance violations. *People v. Chapman*, 425 Mich.

245, 255 n.11 (Mich. 1986); Mich. Comp. Laws § 764.15.

In this case, the violation of Mich. Comp. Laws § 750.335a is a misdemeanor; thus, a valid

arrest of Plaintiff would require probable cause.  *See Chapman*, 425 Mich. at  255 n.11.  As such,

15

it is clearly established that Dykas and Figurski needed knowledge of sufficient facts and circumstances regarding the allegations against Plaintiff sufficient to warrant a prudent man in believing that Plaintiff had committed indecent exposure under Mich. Comp. Laws § 750.335a by exposing himself without violating the Fourth Amendment. *See id.* at 111–12.

### b.      *Excessive Force*

"As a general  matter, it is clearly established that a suspect possesses a right to be free from the use of excessive force." *Abel*, 278 Fed. Appx. at 651 (citing *Graham v. Connor*, 490 U.S. at 399)).  Under Plaintiff's version of the events, which Defendants do not contradict, Figurski had reason to know at a more particularized level that the conduct he allegedly engaged in while repositioning Plaintiff in the rear of the patrol car was unlawful.  According to Plaintiff, he was sitting passively in the rear of the patrol car when Figurski "shoved" Plaintiff's legs into the car to turn him facing forward, resulting in Plaintiff's left knee to hit the door jamb.  Plaintiff had neither resisted arrest nor presented any signs of danger to Defendants. *See Abel*, 278 Fed. Appx. at 651–52 (the defendant had reason to know he was violating a clearly established right while arresting the plaintiff where the plaintiff alleged that he assumed a primarily passive position and used force against the defendant only out of self defense).

### 3.      Objectively Unreasonable

Next, the Court must determine "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right[]." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).

### a.      *False Arrest and Imprisonment*

With respect to Plaintiff's false arrest and imprisonment claim,

16

> the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. But under § 1983, an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.

*Parsons*, 533 F.3d at 501 (citations and internal quotation marks omitted).

Here, Plaintiff's version of the facts are sufficient to raise genuine issues of material fact for trial as to whether Dykas and Figurski could reasonably believe that the arrest of Plaintiff was lawful. As discussed in Part IV(A), *supra*, Mich. Comp. Laws § 750.335a requires that a person "shall not knowingly make any open or indecent exposure of his or her person." The parties dispute whether Dykas and Figurski were told that Parent actually witnessed Plaintiff expose his penis. According to Plaintiff, he never exposed himself, which is supported by Parent's testimony. As such, the Court concludes that genuine issues of material fact exist with respect to whether Dykas and Figurski's actions were objectively unreasonable under the circumstances.

### b.   *Excessive Force*

In excessive-force cases, "[a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether the particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

Here, Plaintiff's version of the facts indicate *no mistake* on the part of Figurski in terms of what the law requires. According to Plaintiff, Figurski applied excessive force to Plaintiff while fully aware Plaintiff only was being charged with indecent exposure (a misdemeanor under Michigan law), cooperating with Defendants, posed no immediate threat, and sitting passively in the rear of the patrol car. *See Solomon*, 389 F.3d at 174–75 (denying an officer qualified immunity as

to an excessive force claim when a woman was arrested for trespassing in a movie theater, kicked in the legs and thrown against a display case despite a minor offense, posing no immediate threat, and not attempting to flee). As such, the Court concludes that no reasonable officer would find that Figurski was reasonably mistaken as to the particular amount of force under the circumstances.

    **4.**    **Conclusion**

Due to the presence of genuine issues of material fact as to whether Dykas and Figurski had probable cause to arrest Plaintiff and whether Figurski violated the Fourth Amendment by his application of excessive force, the Court finds that Dykas and Figurski are not entitled to qualified immunity for the reasons stated above. Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's false arrest and imprisonment claim against Dykas and Figurski and his excessive force claim against Figurski.

## V.  CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendants Clinton Township, Nicholas Dykas, Jason Figurski, and Keith Watson's Motion for Summary Judgment [dkt 30] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the claims against Defendants Clinton Township, Keith Watson, and Paul Parent are dismissed.

IT IS SO ORDERED.

18

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  October 13, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 13, 2011.

s/Marie E. Verlinde
Case Manager
(810) 984-3290